# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | } } } | |
| Plaintiff, | } } | |
| v. | } } | Case No.: **2:12-cv-00775-RDP** |
| HUDAK & DAWSON CONSTRUCTION, et al., | } } } | |
| Defendants. | } } | |

## MEMORANDUM OPINION

Before the court is Plaintiff's Renewed Motion for Summary Judgment (Doc. #55), filed on January 17, 2013 and Plaintiff's Motion to Strike (Doc. #100), filed on April 23, 2013. The Motion for Summary Judgment has been fully briefed (*See* Docs. #89, #90, #93, #98, #99) and was deemed submitted without oral argument on April 23, 2013. For the reasons outlined below, the Motion for Summary Judgment is due to be granted in part and denied in part. Plaintiff's Motion to Strike is due to be terminated as moot.[1]

## I.    Procedural History

Plaintiff, The Hanover Insurance Company, ("Plaintiff" or "Hanover") initiated this action by filing a Verified Complaint for Exoneration of Surety (Doc. #1) on March 9, 2012 against Defendants Hudak & Dawson Construction Company, Inc. ("H&D Construction"), Hudak & Dawson Development Company, LLC ("H&D Development"), Timothy P. Hudak ("Hudak"), Janis

---

[1] Defendant Timothy Hudak filed Response to Plaintiff's Motion to Strike (Doc. #105) on May 8, 2013. However, there is no need for the court to rule upon the merits of Plaintiff's Motion. As will be explained throughout the opinion text when relevant, the portions of the Affidavit that Plaintiff seeks to strike are immaterial to the court's ruling upon the instant motion. Therefore, Plaintiff's Motion to Strike is deemed moot and will be terminated.

Lynn Hudak ("J. Hudak"), Bart D. Dawson ("Dawson"), Melanie Dawson ("M. Dawson"), John W. Dawson ("J. Dawson"), and Betty Joan Dawson ("B. Dawson") (collectively "Defendants" or "Indemnitors").[2]   Plaintiff alleges that Defendants have breached contractual indemnity obligations associated with performance and payment bonds Plaintiff issued on behalf of Defendant H&D Construction. Plaintiff's Complaint contains various claims for relief including: Exoneration and Specific Performance (Count One); Request for Preliminary Injunction (Count Two); Application for Temporary Restraining Order (Count Three); and Demand for Judgment (Count Four). (*See* Doc. #1).

Defendant Dawson filed a cross claim against Defendant Hudak on July 24, 2012.[3]  (Doc. #23).  After a scheduling conference on August 1, 2012, the court entered a modified scheduling order directing the parties to engage in limited discovery on the following issues: (1) the authenticity of Betty Joan Dawson's signature on the first indemnity agreement, and (2) the asset exclusion provision.  (Doc. #25).  On September 13, 2012, the court granted a joint motion to extend the limited discovery deadline and instructed the parties to complete this limited discovery on or before December 14, 2012.  (Doc. #28).

On November 7, 2012, Plaintiff filed a Motion for Summary Judgment  (Doc. #29), a brief in support of the motion (Doc. #30), and evidentiary material (Doc. #31).  On November 26, 2012, Defendants H&D Construction, H&D Development, Hudak, and J. Hudak ("Hudak Defendants")

---

[2]Plaintiff seeks summary judgment against all Defendants except Betty Joan Dawson.  When the term "Defendants" or "Indemnitors" is used throughout this memorandum opinion, depending upon the context, it includes all named defendants or indemnitors except her.

[3]As of May 9, 2013, Hudak had not answered or otherwise responded to the cross claim, and during a telephone conference on May 9, 2013, Hudak's attorney stated that he does not dispute the allegations contained in the cross claim. However, on May 10, 2013, Hudak filed an Answer to Cross-Claim (Doc. #107), admitting certain portions of the allegations but denying that Dawson was entitled to the relief sought.

filed a Rule 56(d) Motion requesting that the court deny or table Plaintiff's Motion for Summary Judgment pending discovery related to Plaintiff's damages.  (Doc. #33).  After that motion was filed and after learning of another discovery dispute, the court set a status conference for December 4, 2012.  (Doc. #34).  In the meantime, the Hudak Defendants filed a reply to Plaintiff's Motion for Summary Judgment (Doc. #37), and Plaintiff filed a Response in Opposition to the Hudak Defendants' Rule 56(d) Motion (Doc. #38) and a Motion to Modify/Enlarge Discovery.  (Doc. #39).  On the morning of the December 4, 2012 status conference, the Hudak Defendants filed  a Motion for Protective Order Prohibiting Discovery Into Financial Assets and Property Holdings.  (Doc. #40).  After the status conference, the court denied without prejudice all of these motions (Docs. #29, #35, #39, #40) and set a discovery deadline of January 10, 2013 and a dispositive motion deadline of January 17, 2013.  (*See* Doc. #41).

Plaintiff's Renewed Motion for Summary Judgment (Doc. #55) requests that the court: (1) enter judgment in its favor in the amount of Two Million Eight Thousand Five Hundred Eighty-Six Dollars and 74/100 ($2,008,586.74) for all losses, costs, and expenses Plaintiff had incurred to date as a result of having issued bonds on behalf of H&D Construction; (2) enter summary judgment on its claim for exoneration and enter an order requiring Defendants, separately and severally, to deposit cash collateral with Plaintiff in the amount of Two Million One Hundred Fifty-One Thousand One Hundred Twenty-Seven Dollars and 42/100 ($2,151,127.42) pending the resolution of all remaining claims Plaintiff has received relative to bonds it issued on behalf of H&D Construction.   Plaintiff submitted a memorandum of law (Doc. #56) and evidence[4] (Doc. #57) in support of its Motion.

---

[4]Plaintiff submitted the following evidence: Deposition of Bart Dawson (Exhibit A); Affidavit of Robert Black (Exhibit B); 2005 Agreement of Indemnity (Exhibit B-1); Huntsville Performance and Payment Bonds (Exhibit B-2); UAB WTI Renovation Performance and Payment Bonds (Exhibit B-3); Dawson Letter of June 24, 2010 Requesting a

On April 8, 2013, Defendants Hudak, J. Hudak, H&D Construction, and H&D Development filed a Response in Opposition to Plaintiff's Renewed Motion for Summary Judgment (Doc. #89) and evidence[5] (Docs. #89-1, #89-2, #89-3, #89-4, #89-5, #89-6) in support of their opposition. Defendants Dawson, B. Dawson, J. Dawson, and M. Dawson filed a Joinders in Response of Defendants Hudak, J. Hudak, H&D Construction, and H&D Development's Response in Opposition (Docs. #90, #93).[6]

On April 22, 2013, Plaintiff filed a reply brief (Doc. #98) and amended evidentiary material[7]

---

Release (Exhibit B-4); Hanover Letter of August 9, 2010 Acknowledging Release; (Exhibit B-5); 2011 Agreement of Indemnity (Exhibit B-6); UAB Basement Demolition Performance and Payment Bond (Exhibit B-7); Second Affidavit of Michelle Smith-Cotto (Exhibit C); Notice to Cure Letters of September 21, 2011 (Exhibit C-1); Demand Letter of September 29, 2011 (Exhibit C-2); Revised Demand Letter of October 31, 2011 (Exhibit C-3); Printouts from Hanover's Claim System (Exhibit C-4); Paid Bond Claim on the Huntsville Airport Expansion Project (Exhibit C-5); Paid Bond Claims on the UAB WTI Renovation Project (Exhibit C-6); Paid Bond Claims on the UAB Basement Demolition Project (Exhibit C-7); Complaint Filed in the Circuit Court of Etowah County, Alabama (Exhibit D); Motion for Leave to Intervene and Order Filed and Entered in the Circuit Court of Etowah County, Alabama (Exhibit E); UAB WTI Renovation Construction Contract (Exhibit F); UAB Basement Demolition Construction Contract (Exhibit G); Deposition of Tim Hudak (Exhibit H); *Mid-Continent Cas. Co. V. Don Brady Constr. Co., Inc.*, 2012 WL 1598149 (S.D. Ala. May 7, 2012) (Exhibit I); Memorandum Opinion and Order, *Travelers v. Thorington Electrical & Constr. Co.*, 2:09-cv-37-WKW (M.D. Ala. Dec. 8, 2009) (Exhibit J).

[5]The Hudak Defendants submitted the following evidence: Affidavit of Defendant Tim Hudak (Exhibit A); Deposition of Toby Pilcher (Exhibit B); Chart Outlining Contract Status and Balances (Exhibit C); Deposition of Matthew Kilgore (Exhibit D); Deposition of Bart Dawson (Exhibit E).

[6]For purposes of this opinion, when the court refers to Defendants' Response in Opposition, it includes the Joinders filed by the Dawson Defendants.

[7]Plaintiff submitted the following additional evidence: Third Affidavit of Michelle Smith Cotto (Exhibit K); Additional Paid Bond Claims on the UAB WTI Renovation Project (Exhibit K-1); Payments Received from the State of Alabama (Exhibit K-2); Hanover's Deposit Tickets Funding Special Account (Exhibit K-3); Payments by Hanover for All Legal and Consulting Expenses (Exhibit K-4); Hanover Analysis of April 25, 2012 (Exhibit K-5); Hanover Bid Tabulation (Exhibit K-6); Kilgore Estimate (Exhibit L); Affidavit of Kelly Johnson (Exhibit M); Judgment Entered in *Mid-Continent Cas. Co. v. Don Brady Constr. Co., Inc., et al.* (Exhibit N); Hanover's Response to Hudaks' First Interrogatories (Exhibit O); Hanover's Response to Hudaks' First Request for Admissions (Exhibit P); Hanover's Response to Hudaks' First Request for Production (Exhibit R); Affidavit of Bruce Hooper (Exhibit S); E-mail of March 24, 2011 (Exhibit S-1); Letter Dated June 25, 2010 to Hanover from John W. Dawson and Betty Joan Dawson (Exhibit S-2); E-mail of June 24, 2011 (Exhibit S-3); Judgment, *Travelers v. Thorington Electrical & Constr. Co.*, 2:09-cv-37-WKW (M.D. Ala. Dec. 8, 2009) (Exhibit T); Deepwater Horizon Economic & Property Damages Settlement Agreement as amended on May 2, 2012 (Exhibit U). In addition to Exhibits K - U, the amended evidentiary submission corrected Plaintiff's initial submission by adding two exhibits to the Second Affidavit of Michelle Smith Cotto: Payment Received from UAB on Basement Demolition (Exhibit C-8) and Payments Received from the State of Alabama on WTI Renovation Project (Exhibit C-9).

(Doc. #99) in further support of is Motion.  Plaintiff's reply brief requests that the court: (1) enter a judgment in its favor in the amount of $4,159,723.16, which was the collateral demand communicated to Defendants in October 2012 or (2) alternatively, enter a judgment in the amount of Plaintiff's loss to date ($3,570,964.97) and an order directing Defendants to deposit $588,758.19 with Plaintiff to be held as collateral security; and (3) with respect to either alternative, directing H&D Construction to deliver the proceeds, if any, of its claim to the BP Settlement Fund to Plaintiff upon receipt.[8]

## II.  Legal Standards for Evaluating a Summary Judgment Motion[9]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a

---

[8]On May 10, 2013, the court granted Defendants' Hudak and J. Hudak's Motion to Strike Portions of Reply Brief in Support of Renewed Motion for Summary Judgment.  (*See* Doc. #106).  Therefore, any reference to the BP settlement claim in Plaintiff's reply brief is **STRIKEN**. Any arguments regarding possible BP claim proceeds are not appropriate on this briefing schedule and will not be considered in deciding the merits of Plaintiff's instant motion. *See, e.g.*, *Herring v. Sec., Dept of Corrections*, 397 F. 3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (internal citations omitted); *White v. ThyssenKrupp Steel, USA, LLC*, 743 F. Supp. 2d 1340, 1357 (S.D. Ala. 2010) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply."); *Carter v. Univ. of S. Ala. Children's & Women's Hosp.*, 510 F. Supp. 2d 596, 608 (S.D. Ala. 2007) (refusing to hear new summary judgment arguments raised for the first time in a reply brief).

[9]Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even considering the 2010 amendments, "the standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 Advisory Committee's Note (2010 Amendments).

genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once a moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)).

If a moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once a moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If a moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, a movant may produce affirmative evidence

6

negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once a moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which a moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that a nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires a movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.

If a movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or a nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, a nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.    Relevant Undisputed Facts[10]

In 1995 or 1996, Hudak and Dawson formed H&D Construction, and they are the sole shareholders of that company.  (Doc. #57-1, Ex. A, Dawson Dep. at 12-13).  In 2005, in order to induce Plaintiff to issue surety bonds on behalf of H&D Construction, Defendants[11] executed an Agreement of Indemnity in favor of Plaintiff.  (Doc. #57-2,  Ex. B, Black Aff. at ¶ 2; Doc. #57-2, Ex. B-1, 2005 Agreement of Indemnity).  According to the Agreement of Indemnity, Defendants agreed to "exonerate, indemnify, and save harmless" Plaintiff from any claim or loss on bonds issued on behalf of H&D Construction.  (Doc. #57-1, Ex. A, Dawson Dep. at 20; Doc. #57-2, Ex. B-1, 2005 Agreement of Indemnity at 2).  Two amendments to the Agreement of Indemnity identify certain assets that are excluded "from any demand for indemnification."[12]   (Doc. #57-2, Ex. B-1, Amendment #1 and  Amendment #2 to Agreement of Indemnity).  An addendum to the Agreement of Indemnity also excludes Defendants' personal residences.[13]  (Doc. #57-2, Ex. B-1, Addendum to

---

[10]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only. They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[11]Although it appears Defendant Betty Joan Dawson signed the Agreement, she denies she signed it.  (Doc. #5). As already noted, Plaintiff is presently not seeking summary judgment against her.  *See supra* footnote 2.

[12]These assets include the following: (1) Hudak Hardware Paint & Supply Company; (2) 2104 Rainbow Drive, Gadsden, Alabama; (3) 2106 Rainbow Drive, Gadsden, Alabama; (4) Hidden Creek Apartments: 105 Nichols Avenue, Rainbow City, Alabama 35906; (5) Hidden Creek Apartments: 202 Nichols Avenue, Rainbow City, Alabama 35906; (6) House Located: 861 Crown Point, Gadsden, Alabama 35901; (7) House & Acreage: 3702 Bland Street, Rainbow City, Alabama 35906; (8) Condominium: 1048 Hwy 98 East, Unit 503, Destin, Florida 32541; (9) Condominium: St. Lucia, 15000 Emerald Coast Parkway. #401, Destin, Florida 32541; (10) Farm Located at County Road 33, Ashville, Alabama 35953; (11) Lot located at 611 Gulf Shores Drive, Lot 18, Destin, Florida 32541; (12) IRA (John W. Dawson) IN THE AMOUNT OF $1,272,582.36 AS OF MAY 31, 2004. (Doc. #57-2, Ex. B-1, Amendment #1 and  Amendment #2 to Agreement of Indemnity).

[13]The residences excluded under the addendum include the following: (1) 301 Lakewood Drive, Gadsden, Alabama 35901; (2) 212 Claremont Drive, Gadsden, Alabama 35901; (3) 100 Hartwood Drive, Gadsden, Alabama 35901. (Doc. #57-2, Ex. B-1, Addendum to Agreement of Indemnity).

Agreement of Indemnity).

Plaintiff issued performance and payment bonds on behalf of H&D Construction on various projects including: the Huntsville Airport Expansion; the UAB Wallace Tumor Institute Renovation ("UAB WTI Renovation"); and, the Basement Demolition for the WTI Advanced Imagining Center ("UAB Basement Demolition"). (Doc. #57-2, Ex. B-2, Huntsville Bonds; Doc. #57-2, Ex. B-3, UAB WTI Renovation Bonds; Doc. #57-2, Ex. B-7, UAB Basement Demolition Bonds). H&D Construction's contract on the UAB WTI Renovation was for $6,474,300.00 (Doc. #57-6, Ex. F, WTI Contract). H&D Construction's contract on the UAB Basement Demolition was for $437,507.00. (Doc. #57-7, Ex. G, Basement Contract). On June 24, 2010, prior to the award of the UAB Basement Demolition contract, Defendant J. Dawson requested that Plaintiff terminate his obligations under the 2005 Indemnity of Agreement as to any future bonds issued on behalf of H&D Construction. (Doc. #57-2, Ex. B-4, Letter).

In 2011, prior to issuing bonds on the UAB Basement Demolition, Plaintiff requested that Defendants Hudak and Dawson supplement the 2005 Agreement of Indemnity. (Doc. #57-2, Ex. B, Black Aff. at 6). The supplemental Agreement of Indemnity was executed on March 8, 2011[14] by Hudak, as president of H&D Construction and managing member of H&D Development, and by

---

[14]Defendants dispute the supplemental Agreement of Indemnity was executed on March 8, 2011 and claim the Agreement did not go into effect until March 25, 2011. (Doc. #89, Non-Movant's Response to Moving Party's Claimed Undisputed Facts at 8). The Agreement itself contains a March 8, 2011 date above the signatures of Hudak and Dawson. (Doc. #57-2, Ex. B-6, Agreement of Indemnity). Moreover, the court has reviewed the record and finds that the individual and corporate acknowledgments were not executed until March 25, 2011. (Doc. #57-2, Ex. B-6, Agreement of Indemnity). Any dispute over the date of execution is not material and is noted only for the sake of clarifying the parties' respective positions on this issue. Thus, Plaintiff's Motion to Strike the portions of Hudak's Affidavit regarding the date the 2011 Agreement of Indemnity became operative is **MOOT** as any dispute over the date of execution is immaterial to the court's ruling.

Hudak and Dawson, individually.[15]  (Doc. #57-2, Ex. B-6, Agreement of Indemnity).  Individual and corporate acknowledgments were executed on March 25, 2011.  (Doc. #57-2, Ex. B-6, Agreement of Indemnity).

On September 21, 2011, the architect for the UAB projects sent Notices to Cure to H&D Construction after learning H&D Construction had abandoned both job sites prior to completion.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 2; Doc. #57-3, Ex. C-1, Notice to Cure Letters).  Plaintiff received copies of these letters.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 2).  Plaintiff began an investigation and demanded that Defendants post collateral in the amount of $1,000,000.00 pending final resolution of all potential claims under the performance and payment bonds. (Doc. #57-3, Ex. C-2, September 29, 2011 Demand Letter).  Plaintiff determined that H&D Construction was in default of both UAB contracts.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 3).  Plaintiff also learned that Defendants J. Dawson, B.J. Dawson, and Dawson had filed a lawsuit in state court against Defendant Hudak.  (Doc. #57-5, Ex. D, Complaint; Doc. #57-6, Ex. E, Motion to Intervene).  Ultimately, UAB terminated its contracts with H&D Construction.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 3).

In October 2011, Plaintiff hired Robert C. Gentle Construction Consultants ("Gentle Consultants") to supervise and manage the UAB projects. (Doc. #57-3, Ex. C, Second Cotto Aff. at

---

[15]The parties dispute whether the asset exclusions that applied to the 2005 Agreement of Indemnity were also included as part of the 2011 Agreement.  Plaintiff maintains that, by executing the 2011 Agreement, Hudak and Dawson were providing full indemnity with no asset exclusions.  (Doc. #57-2, Ex. B, Black Aff. at 6).  Defendants assert that the 2011 Agreement without the asset exclusion provision applied only to the costs for the UAB Basement Demolition project.  (Doc. #89-1, Ex. A, Hudak Aff. at 6).  Whether the asset exclusions associated with the 2005 Agreement also applied to the 2011 Agreement is immaterial to the court's ruling upon Plaintiff's Renewed Motion for Summary Judgment.  The issue of asset exclusions is only relevant to any attempt to collect a judgment not to Defendants' liability.  Accordingly, Plaintiff's Motion to Strike the portions of Defendant Hudak's Affidavit regarding the asset exclusions is **MOOT** as any dispute over this issue is not is immaterial and is not considered by the court.

3; Doc. #89-4, Ex. D, Kilgore Dep. at 5-10).  Plaintiff also hired Chase Building Group to complete

the UAB WTI Renovation.[16]  (Doc. #89-2, Ex. B, Pilcher Dep. at 90-91).  Plaintiff incurred losses

due to the increased cost of completion and payments to subcontractors on the Huntsville Airport

and UAB projects.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 3).  On October 31, 2012, Plaintiff sent

a revised collateralization demand to Defendants in the amount of $4,159,723.16.  (Doc. #57-3, Ex.

C-3, October 31, 2012 Demand Letter).  To date, none of the Defendants have posted any collateral

or reimbursed Plaintiff for losses incurred under the bonds.  (Doc. #57-3, Ex. C, Second Cotto Aff.

at 12).  Plaintiff now estimates that its total loss, net of all funds received from the contract owners

and including legal/consulting expenses, is  $3,570,964.97.[17]  (Doc. #99-1, Ex. A, Third Cotto Aff.

at 4, 5).

　　　　Plaintiff's corporate representative, Toby Pilcher ("Pilcher"), testified that Plaintiff sent

employees to H&D Construction's corporate offices to analyze the accounting, outstanding expenses,

and remaining payments on the UAB projects.  (Doc. #89-2, Ex. B, Pilcher Dep. at 53-54).  Matt

Kilgore ("Kilgore"), a project supervisor for Gentle Consulting, tracked money paid by UAB under

both the original H&D Construction contracts and then the contracts with Plaintiff to complete the

projects.  (Doc. #89-4, Ex. D, Kilgore Dep. at 5-6).  Kilgore documented the amount Plaintiff was

required to pay above the original contract prices, any changes to the contracts, and money paid to

---

[16]Sometime in 2011, Dawson became a Chase employee and began work as a supervisor on the UAB WTI Renovation.  (Doc. #89-6, Ex. E, Dawson Dep. At 91, 110).

[17]After Plaintiff filed its Renewed Motion for Summary Judgment on January 17, 2013, discovery continued and briefing deadlines were extended by the court.  In its Brief filed on January 17, 2013, Plaintiff estimated its total projected loss to be $4,159,714.16.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 9).  In their Response in Opposition, Defendants disputed this amount arguing that apart from self-serving affidavits containing general, undifferentiated estimates, Plaintiff had offered no evidence in support of this projected loss.  (Doc. #89, Non-Movant's Response to Moving Party's Claimed Undisputed Facts at 8).  However, as explained in Part IV.A., *infra*, Plaintiff has provided specific evidence regarding payments made and received under the bonds and has itemized its losses.  Thus, Defendants' arguments on this point miss the mark.

subcontractors.   (Doc. #89-4, Ex. D, Kilgore Dep. at 5-6).

Although Plaintiff can estimate its total loss, a final amount is incalculable at this time.  The UAB WTI Renovation was not scheduled to be complete until, at the earliest, late April 2013.  (Doc. #89-2, Ex. B, Pilcher Dep. at 62).   Following completion of this project, Plaintiff will finalize accounting and resolve outstanding disputes with UAB, subcontractors, and material men.  (Doc. #89-2, Ex. B, Pilcher Dep. at 62-65; Doc. #89-4, Ex. D, Kilgore Dep. at 111).  UAB is also reserving its right to make a claim for liquidated damages because of delays in completing the original contracts.  (Doc. #57-3, Ex. C, Second Cotto Aff. at 3; Doc. #89-2, Ex. B, Pilcher Dep. at 64). Plaintiff is currently involved in disputes with subcontractors on the projects over funds that may have to be paid by, or refunded to, Plaintiff.  (Doc. #89-4, Ex. D, Kilgore Dep. at 57-59; 64-65).

## IV.   Discussion

Plaintiff argues that it is entitled to: (1) reimbursement under (a) its common law right to indemnification and (b) the terms of the 2005 and 2011 Agreements of Indemnity; (2) collateralization to the full amount of its anticipated loss; and (3) "immediate funds from Defendants to protect it from further liability resulting from the issuance of bonds on behalf of H&D Construction" under the equitable doctrine of *quia timet*.  (Doc. #56).

Defendants' Response in Opposition to Plaintiff's Renewed Motion for Summary Judgment (Doc. #89) does not dispute the issue of liability under the Agreements of Indemnity.  The Response in Opposition is grounded on three contentions: (1) Plaintiff's Renewed Motion for Summary Judgment is not ripe for review because Plaintiff has not performed a final accounting and cannot yet determine final project completion costs; (2) genuine issues of material fact exist regarding the estimated cost of completion; and (3) genuine issues of material fact exist regarding the applicability

and extent of the asset exclusion provision accompanying the 2005 Agreement of Indemnity. (Doc. #89).

Initially, the court rejects Defendants' contention that Plaintiff's Renewed Motion for Summary Judgment is not ripe for review because the final construction costs have not been calculated. As outlined in greater detail below, multiple courts have enforced a surety's right to reimbursement and/or collateralization for payments made and future losses incurred on bonded obligations based solely upon indemnity provisions that were triggered upon a principal's default. Moreover, Defendants' assertion that Plaintiff's Motion should be denied because issues of fact exist regarding asset exclusions rings hollow. The applicability of the asset inclusions of the 2005 Agreement of Indemnity has no bearing whatsoever on Defendants' liability under both the 2005 and 2011 Agreements of Indemnity. Any argument to that effect is relevant only to execution of any judgment, and therefore will not be addressed here. Thus, the only potentially viable argument left is Defendants' allegation that disputes of fact regarding the estimated cost of completion preclude summary judgment. That issue will be addressed below in the context of an analysis of Defendants' obligations to reimburse Plaintiff under the Agreements of Indemnity.

### A.    Defendants Are Obligated to Reimburse Plaintiff For Losses Incurred to Date

Plaintiff argues that because it had made payments pursuant to bonds issued on behalf of H&D Construction, Defendants must indemnify Plaintiff for those payments, plus interest, expenses, and attorney's fees pursuant to the 2005 and 2011 Agreements of Indemnity and the law. Under Alabama law, a surety's right of reimbursement from its principal for losses incurred on bonded obligations is established in a number of ways — by common law, contract, and statute. *See SouthTrust Bank of Ala., N.A. v. Webb-Stiles, Co., Inc.*, 931 So. 2d 706, 712 (Ala. 2005) ("When a

13

surety satisfies the principal's obligation, it is entitled to reimbursement or restitution from the principal."); *Doster v. Cont'l Cas. Co.*, 105 So. 2d 83, 85-86 (Ala. 1958) ("Upon the payment by surety of the debt, for which is he bound, it being then due, a right of action for reimbursement arises in his favor against the principal."). In fact, "the rule in most jurisdictions is that '[a] surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed.'" *Frontier Ins. Co. v. Int'l, Inc.*, 124 F. Supp. 2d 1211, 1213 (N.D. Ala. 2000) (quoting *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D. Fla. 1990). "The only exception...arises when the payment has been made 'through fraud or lack of good faith' on the part of the surety. . . ." *Fidelity & Deposit Co. v. Bristol Steel & Iron Works*, 722 F.2d 1160, 1163 (4th Cir. 1983) (quoting *Engbrock v. Federal Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967)).

In addition to rights created under common law and valid indemnity agreements, a surety's right to reimbursement in Alabama is codified through legislation providing for the indemnification of a surety for liabilities caused by a principal's default. The Alabama Code provides that "[p]ayment by a surety...of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal." Ala Code. § 8-3-5 (1975). Thus, based contract principles and applicable law, if a surety sufficiently demonstrates that it has made payments on bonds issued on behalf of its principal, the surety may recover those payments, interest, expenses, and attorney's fees.

The court does not dispute the general principle that "[u]pon the payment by surety of the debt, for which is he bound, it being then due, a right of action for reimbursement arises in his favor against the principal." *Doster*, 105 So. 2d at 85-86. Here, however, because the parties entered into

14

Agreements of Indemnity, Plaintiff may not rely on a common law theory of indemnification.  *See e.g., Nw. Nat. Ins. Co. v. Lutz,* 71 F.3d 671, 677 (7th Cir. 1995) ("We agree that the existence of a separate indemnification agreement dictates that the rights of the parties will be determined according to that document," rather than implied indemnity principles); *Fidelity & Deposit Co.*, 722 F.2d at 1163 (in the case of an express indemnification contract, the rights of sureties are not determined by general indemnity principles but upon the contract of indemnification); *Com'l Ins. Co. of Newark v. Pacific-Peru Constr.*, 558 F.2d 948, 953 (9th Cir. 1977) ("[R]esort to implied indemnity principles is improper when an express indemnification contract exists."); *Ohio Casualty Ins. Co. v. Holcim (US), Inc.*, 2007 WL 2807570 at *11 (S.D. Ala. Sept. 25, 2007), *rev'd on other grounds*, 589 F.3d 1361 (11th Cir. 2009) ("[A] clear majority of courts have found that a party is proscribed from recovering on an implied indemnity theory where the parties executed an express written indemnity agreement. . . . This Court joins the myriad authorities cited above and finds that parties' rights to common law indemnity are cut off where those parties enter into an express indemnity agreement, through which they themselves delineate when and under what such circumstances an indemnification obligation will arise.").  Accordingly, Plaintiff's right to reimbursement, if any, arises under the Agreements of Indemnity.

The Agreements of Indemnity in favor of Plaintiff require Defendants to "exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees. . . ." (Doc.  #57-2, Ex. B-1, 2005 Agreement of Indemnity at 2; Doc. #57-2, Ex. B-6, 2011 Agreement of Indemnity at 2).  Defendants

do not deny that they are bound by the terms of the Agreements of Indemnity.[18]   (Doc. #57-1, Ex. A, Dawson Dep. at 20; Doc. #57-8, Ex. H, Hudak Dep. at 30-32).   Moreover, the parties do not dispute that the plain language of the Agreements of Indemnity creates an obligation on the part of the Defendants to indemnify Plaintiff.   Therefore, Defendants are bound under the Agreements of Indemnity to indemnify Plaintiff for the expenses and costs that it has incurred due to H&D Construction's default on its obligations unless Defendants can demonstrate Plaintiff made payments in bad faith or as a result of fraud.

"[I]ndemnitors can defeat a surety's right to recover under indemnity provisions by demonstrating either fraud of lack of good faith on the part of the surety in discharging its obligations under the bond." *Frontier Ins. Co.*, 124 F. Supp. 2d at 1214; *see also Fidelity & Deposit Co.,* 722 F.2d at 1163 (noting that contractual indemnity agreements are routinely enforced absent the "single exception" of payments made by the surety through fraud or bad faith); *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967) ("In the face of these provisions, an indemnitor may successfully attack payments made by [the surety] only by pleading and proving fraud or lack of good faith by [the surety].").

"In the suretyship context, lack of good faith 'carries an implication of dishonest purpose, a conscious doing of wrong, a breach of duty through motives of self-interest or ill-will.'" *Frontier Ins. Co.*, 124 F. Supp. 2d at 1214  (quoting *Elmore v. Morrison Assurance Co.*, 505 So. 2d 378, 380 n.1 (Ala. 1987).   To establish bad faith, the indemnitor must demonstrate that the surety acted with

---

[18]During the May 9, 2013 telephone conference, counsel for all Defendants conceded that no dispute exists regarding liability and that the only remaining questions concern the amount of damages.   Moreover, as already noted, Defendants' Response in Opposition to Plaintiff's Renewed Motion for Summary Judgment (Doc. #89) does not argue that Defendants are not liable.

"deliberate malfeasance, which is an intentional wrongful act which the action has no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty." *Employers Ins. of Wausau*, 749 F. Supp. at 1103. A "lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith." *Id.*

Nowhere in Defendants' Response in Opposition do they claim Plaintiff fraudulently made payments and they have not made any *specific* allegation of bad faith. Nevertheless, the court will construe Defendants' assertions on this point as alleging Plaintiff made payments in bad faith. Even based upon that generous reading, these arguments fall woefully short. Defendants contend that Plaintiff, Plaintiff's outside consultant overseeing completion of the UAB projects, and Defendants all cite conflicting figures regarding the cost of completion, creating a dispute of fact regarding damages.[19] (Doc. #89). Defendants also maintain that disputes of fact exist regarding the factors that Plaintiff has used to calculate its costs, including the possibility of liquidated damages and alterations to the original construction contracts. (Doc. #89). Defendants further challenge the "reasonableness of [Plaintiff's] alleged expenses,"[20] claiming that Plaintiff accepted a bid from

---

[19]Defendant Hudak's Affidavit states that he was told by Plaintiff's accountants that "the cost to complete the UAB Projects as well as finalize the costs related to the Huntsville airport job would be $1,218,689." (Doc. #89-1, Ex. A, Hudak Aff. at 10). As explained in detail below in the opinion text, this testimony is immaterial to the court's ruling as Defendants signed Agreements of Indemnity requiring them to accept vouchers or other evidence of payment by Plaintiff as conclusive of the amount of liability. Therefore, Plaintiff's Motion to Strike the portions of the Affidavit related to this figure is **MOOT**.

[20]Defendant Hudak's Affidavit alleges that Plaintiff's estimated cost of completion "is an unreasonable, inflated sum." (Doc. #89-1, Ex. A, Hudak Aff. at 9). As explained in the opinion text, "reasonableness" is not an appropriate method by which to attack a surety's payments under bonds. As such, the court does not consider this testimony, and Plaintiff's Motion to Strike the portions of the Affidavit related to the "reasonableness" of Plaintiff's completion costs is **MOOT**.

Chase Building and "apparently" did not consider Defendant Hudak's "equivalent bid."[21]   (Doc. #89).  These arguments lack merit and are immaterial.

First, these arguments do not create a dispute of material fact sufficient to deny summary judgment.  By signing the Agreements of Indemnity, Defendants agreed that Plaintiff may determine "in its sole discretion" the amount sufficient for it to be indemnified and that "[v]ouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefore."  (Doc. #57-2, Ex. B-1, 2005 Agreement of Indemnity at 3; Doc.  #57-2, Ex. B-6, 2011 Agreement of Indemnity at 3).   Here, Plaintiff has submitted evidence asserting its has incurred $3,570,964.97 in losses as of April 22, 2013, arising from the performance and payment bonds issued on behalf of H&D Construction. (Doc. #99-1, Ex. K, Third Smith-Cotto Aff. at 4).  Plaintiff's evidence includes a detailed record of its payments, including the name of various payees, check numbers, the amount, and date of payment.[22]  Plaintiff has also submitted evidence regarding what it has recovered from contract balances.[23]  By the terms of the Agreements of Indemnity, Defendants agreed to accept this

---

[21]Despite Hudak's assertion that his bid was equivalent or similar to the Chase Building bid, the undisputed evidence does not support Hudak's position.  Chase Building's bid contained a 3.95% fee for the equivalent of a $154,050.00 payment based upon a $3,900,000.00 project value.  (*See* Doc. #99-1, Ex. K-6, Bid Tabulation).  Hudak's bid contained a 4.5% fee for the equivalent of a $175,500.00 payment based upon a $3,900,000.00 project value.  (*See* Doc. #99-1, Ex. K-6, Bid Tabulation).  Therefore, the two bids were not "equivalent" as Hudak alleges.  Moreover, any dispute over this issue is immaterial as explained in detail below in the opinion text.  As such, Plaintiff's Motion to Strike the portions of Hudak's Affidavit regarding the bid is **MOOT**.

[22]*See* Doc. #57-3, Ex. C-4, Hanover Financials Check Summary; Doc. #57-3, Ex. C-5, Paid Bond Claims on Huntsville Airport Expansion; Doc. #57-3, Ex. C-6, Paid Bond Claims on UAB WTI Renovation Project; Doc. #57-3, Ex. C-7, Paid Bond Claims on UAB Basement Demolition Project Doc. #99-1, Ex. K-1, Additional Paid Bond Claims on UAB WTI Renovation Project; Doc. #99-1, Ex. K-3, Plaintiff's Deposit Ticket Funding Special Account; Doc. #99-1, Ex. K-4, Payments by Plaintiff for Legal and Consulting Expenses.

[23]*See* Doc. #57-3, Ex. C-8, Payment Received From UAB on Basement Demolition Project; Doc. #57-3, Ex. C-9, Payment from State of Alabama on UAB WTI Renovation Project;  Doc. #99-1, Ex. K-2, Payments Received from State of Alabama on WTI Renovation Project.

evidence of payment as conclusive evidence regarding the amount of liability and of their obligation to reimbursement Plaintiff for that amount.  (*See* Doc.  #57-2, Ex. B-1, 2005 Agreement of Indemnity at 3; Doc.  #57-2, Ex. B-6, 2011 Agreement of Indemnity at 3).  As already noted, Defendants do not dispute they signed the Agreements of Indemnity or that they are bound by their terms.  (Doc. #57-1, Ex. A, Dawson Dep. at 20; Doc. #57-8, Ex. H, Hudak Dep. at 30-32).  Therefore, Plaintiff's evidence of payments made on the construction bonds are binding upon Defendants.

Not only is the evidence submitted by Plaintiff regarding payment evidence of the amount of liability, but also Defendants do not dispute the amount Plaintiff has paid to date.  Defendants only attack the reasonableness of these payments and argue that summary judgment should be denied because the final completion costs are unknown.  These allegations are insufficient to demonstrate that Plaintiff made the payments based on improper motive or purpose.  Courts have repeatedly emphasized that even "gross negligence, bad judgment and alleged excessive payments by the surety does not rise to the level of bad faith."  *Frontier Ins. Co.*, 124 F. Supp. 2d at 1214-15 (citing *Engbrock*, 370 F.2d at 785-87; *Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 976-77 (D. Or. 1989)).  Therefore, the court finds that Defendants' have not met their burden to prove Plaintiff made payments in bad faith.  Because (1) the terms of the Agreements of Indemnity require Defendants to accept Plaintiff's evidence of payment as conclusive, and (2) Defendants have not met their burden to show Plaintiff's made payments in bad faith, Plaintiff is entitled to summary judgment on its claim for contractual reimbursement in the amount of $3,570,964.97, which evidences Plaintiff's loss to date, including all claims and legal and consulting fees, net of all funds received by UAB and

the State of Alabama.[24]

### B.    Collateralization

In addition to reimbursement for incurred losses to date, Plaintiff argues that Defendants' obligations apply to all anticipated losses.  According to the Agreements of Indemnity, the parties agreed that "if the amount asserted as a claim, demand or suit is unascertainable" Defendants would pay upon demand "the amount [Plaintiff] deems sufficient to indemnify and hold it harmless" and Plaintiff has the "right to hold such funds as collateral. . . ."  (*See* Doc.  #57-2, Ex. B-1, 2005 Agreement of Indemnity at 3; Doc.  #57-2, Ex. B-6, 2011 Agreement of Indemnity at 3).   Plaintiff twice demanded cash collateral security from Defendants pursuant to this provision. (Doc. #57-3, Ex. C-2, September 29, 2011 Demand Letter for $1,000,000.00; Doc. #57-3, Ex. C-3, October 31, 2012 Demand Letter for $4,159,723.16).  Thus, Plaintiff seeks summary judgment ordering specific performance of the collateral security provisions of the Agreements of Indemnity.  (Doc. #56). Defendants respond that (1) none of the authority cited by Plaintiff supports an award on summary judgment as to projected, speculative losses, and (2)  even if the court were to determine that specific performance is an appropriate remedy, such a remedy is far different from entry of judgment with a specific monetary award of damages.  (Doc. #89).

It is has long been established that specific performance is an appropriate remedy only "when[] it is made to appear that an action at law for damages would be an inadequate or impracticable remedy."  *Gen. Secs. Corp. v. Welton*, 135 So. 329, 331 (Ala. 1931).  The decision to

---

[24]As Plaintiff has conceded, John Dawson did not incur any new indemnity obligations after July 14, 2010.  (*See* Doc. #56; Doc. #57-2, Ex. B-5, Latter of August 9, 2010).  Therefore, Defendant John Dawson is only liable to Plaintiff for losses incurred on bonds related to the Hunstville Airport Expansion and UAB WTI Renovation and not on the UAB Basement Demolition.

grant specific performance rests largely in the discretion of the trial judge.  *See e.g.*, *Edwards v. Thornburgh*, 396 So. 2d 678, 680 (Ala. 1981).  And, "whether relief shall be granted depends upon an equitable consideration of the specific circumstances of each case."  *Stringfellow Materials, Inc. v. Lee*, 438 So. 2d 1387, 1390 (Ala. 1983).

In the context of a surety's motion for summary judgment on a claim for specific performance of a collateral security provision of an indemnity agreement, the court understands there is a split of authority on the issue.  *Compare Safeco Ins. Co. of Am v. Mountaineer Grading Co.*, 2012 WL 830158 at * 9 (S.D. W. Va. March 9, 2012) (finding that the surety failed to demonstrate it was entitled to specific performance when it only asserted that indemnitors failed to perform under the collateral security provision of a contract and did not offer any evidence demonstrating why its remedies at law were inadequate) *with Mid-Continent Cas. v. Don Brady Constr. Co., Inc.*, 2012 WL 1598149 (S.D. Ala. May 8, 2012) (in granting summary judgment, noting that indemnification agreement entitled surety to reimbursement and collateralization for any reserve established by surety in anticipation of any loss under any bond); *and Travelers Cas. & Surety Co. of N. Am. v. Thorington Elec. & Constr. Co.*, Memorandum Opinion and Order, 2:09-cv-37-WKW (M.D. Ala. Dec. 8, 2009) (granting summary judgment and fining surety was entitled to reimbursement for claims and expenses and collateral against unliquidated losses, costs, and expenses).  Recognizing the split in authority and without clear direction under Alabama law regarding a surety's right to specific performance when it also seeks a money judgment, this court is not prepared to grant summary judgment at this juncture on Plaintiff's claim for specific performance.  Moreover, the court is inclined to follow the reasoning of those courts that have refused to grant summary judgment on a specific performance claim where the surety has offered no evidence demonstrating why its remedies

21

at law are inadequate.[25]  Accordingly, Plaintiff's Motion for Summary Judgment on its claim for specific performance is due to be denied.

C.    **Plaintiff is Not Entitled to Funds Under the Common Law Doctrine of** *Quia Timet*

Plaintiff also seeks "immediate funds from Defendants to protect it from further liability resulting from the issuance of bonds on behalf of H&D Construction."  (Doc. #56).  Plaintiff maintains is entitled to such funds under the common law doctrine of *quia timet* because it fears "that Defendants will be unable or unwilling to satisfy any remaining claim that is determined to be meritorious."  (Doc. #56).  *Quia timet* is an equitable device whereby courts can protect some party against an anticipated future injury.  *See Doster*, 105 So. 2d at 86 ("A court of equity will also prevent injury in some cases, by interposing before any actual injury has been suffered, by a bill which has sometimes been called a bill quia timet, in analogy to proceedings at the common law, where in some cases a writ may be maintained before any molestation, distress, or impleding.") (internal citations omitted).  Other than *Doster*, Plaintiff has not cited (and the court is unaware) of any Alabama authority applying this doctrine in the context of a surety situation.  There is a  dearth of recent (and relevant) Alabama or Eleventh Circuit authority examining the application of this common law doctrine under Alabama law where the surety has brought a legal action for, and is

----

[25]To be sure, specific performance is an important remedy that comes into play when money damages are inadequate to remedy a breach.  One of the classic specific performance hypotheticals involves a breach of contract involving an unusual or one-of-a kind object.  For example, assume a party enters into an agreement with another to buy a unique antique jade ring for his mother's birthday that is exactly like the one she lost years before.  If the seller refuses to furnish the ring upon payment, the court could turn to doctrine of specific performance and order that the ring be delivered.  However, what happens when the seller breaches but is no longer in possession, custody, or control of the ring?  How can specific performance be ordered in that case?  What good would it do the buyer?  This is arguably close to the situation here where – other than its belated BP settlement fund assertions – Plaintiff has not pointed to any funds or assets (and has hinted that any such assets may have been encumbered, transferred, or otherwise disposed of) that are subject to collateralization.

entitled to, a money judgment for reimbursement.  However, the court has examined relevant case law from other jurisdictions and finds that Plaintiff's right of *quia timet* is moot because Plaintiff has already made payments under the bonds.  *Borey v. Nat'l Union Fire Ins. Co of Pittsburgh, Pa.*, 934 F.2d 30, 32 (2d Cir. 1991) (noting that *quia timet* typically is a remedy available to a surety who *anticipates* he will suffer a loss in the future because the principal in *likely in default*) (emphasis added); *Buskirk v. King*, 72 F. 22, 22 (4th Cir. 1896) ("Like bills of *quia timet*, injunctions in such cases are in the nature of writs of *prevention*, intended to accomplish the ends of *precautionary* justice.") (emphasis added).  Here, Plaintiff has suffered injury because it has made payments under the bonds.  Thus, its claim for funds under the doctrine of *quia timet,* as an equitable writ of prevention, is moot.  *See id*; *see also  Safeco Ins. Co. of Am.*, 2012 WL 830158, at *10-11 (denying surety's motion for summary judgment as to claim for funds under *quia timet* where surety had already made payments on the bonds).  Accordingly, Plaintiff's Motion for Summary Judgment on this claim is due to be denied.

## V.    Conclusion

For the reasons stated above, Plaintiff's Renewed Motion for Summary Judgment is due to be granted in part and denied in part.  Summary judgment is due to granted on Plaintiff's claim for contractual indemnity.  Summary judgment is due to be denied on Plaintiff's claims for common law indemnity, specific performance of the collateral security provision, and funds under the doctrine of *quia timet*.

Additionally, Plaintiff's Motion to Strike Portions of the Affidavit of Defendant Tim Hudak (Doc. #100) is due to be terminated as moot.

A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ____20th____ day of May, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE